IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN AND ANNE TARTIKOFF,

           Plaintiffs,

v.

USAA CASUALTY INSURANCE COMPANY,

           Defendant.

CIVIL ACTION
NO. 23-1590

**OPINION**

**Slomsky, J.**                                                                                                        **August 29, 2023**

### I.  INTRODUCTION

On the morning of April 10, 2019, while Plaintiff John Tartikoff was riding his bicycle through an intersection, he was struck by an uninsured motorist who ran through a red light. He was knocked from his bike and sustained serious injuries, including multiple fractures, displaced ribs, and abrasions. He was diagnosed with cervical, thoracic, and lumbar strain, and magnetic resonance imaging (MRI) revealed several protruded and herniated vertebral discs. For the next several months, Mr. Tartikoff visited a physical therapist and other specialists for ongoing treatment. During his recovery, he experienced numbness in his right hand and a limited range of motion in his right shoulder. He also has reported anxiety, depression, and sleep disorders. Mr. Tartikoff demanded that Defendant USAA Casualty Insurance Company, with which he had a $300,000 per person of uninsured motorist coverage, send him the full policy limits. USAA denied this claim.

On March 23, 2023, Plaintiffs John Tartikoff and his wife Anne filed a three-count Complaint against USAA in the Court of Common Pleas of Philadelphia County. Mr. Tartikoff alleges that (1) USAA breached its contractual duties (Count I) and denied his uninsured motorist claim in bad faith (Count II). Mrs. Tartikoff alleges that she is entitled to uninsured motorist benefits based on loss of consortium (Count III). USAA was served with the Complaint on March 28, 2023 and removed this case to federal court on April 26, 2023. Before the Court is USAA's Motion to Dismiss only the bad faith claim alleged in Count II of the Complaint.

## II.   BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true at the motion to dismiss stage. On April 10, 2019 at 9:12 a.m., Mr. Tartikoff was riding his bicycle westbound on Arch Street in Philadelphia, Pennsylvania. (Doc. No. 1-4 at 6.) As he approached the intersection of Arch and Broad Streets, he proceeded through the intersection in the crosswalk. (Id.) While Mr. Tartikoff was proceeding through the intersection, James Rodgers, who was driving his Nissan Altima, ran a red light at the intersection and struck Mr. Tartikoff. (Id.) Rodgers's vehicle was not insured at the time and he did not have any insurance policy or coverage in effect that would cover the collision. (Id. at 11.) Mr. Tartikoff was knocked off his bike. (Id. at 6.) After the collision, he was admitted as a trauma patient at Hahnemann Hospital and reported neck pain that radiated down the right side of his body, right shoulder pain, and upper and lower back pain. (Id. at 7.) After conducting diagnostic tests on Mr. Tartikoff, medical providers at Hahnemann diagnosed him with a right clavicle fracture, multiple displaced ribs and comminuted rib fractures,[1] a lacerated left forearm, and multiple abrasions. (Id.) He

---

[1]   A comminuted fracture occurs when a bone breaks into multiple pieces.

2

was prescribed various pain medications and was discharged with instructions to follow up with an orthopedist. (Id.)

On April 30, 2019, Mr. Tartikoff visited Dr. Robert Carabelli for treatment. (Id.) Mr. Tartikoff told Dr. Carabelli that he had neck and lower back pain, sharp stabbing pains radiating to his right upper extremity, and had trouble sleeping. (Id.) Dr. Carabelli diagnosed him with cervical, thoracic, and lumbar strain and he was placed on light duty for three months. (Id.) Dr. Carabelli ordered an MRI of Mr. Tartikoff. (Id.) The MRI revealed the following:

- At C2-3, there is a 4.5 mm broad-based disc protrusion impinging upon the left antral aspect of the spinal canal compromising the left neural foramen;

- At C3-4, there is a broad-based disc protrusion eccentric to the left compromising the left neural foramen measuring 4.5 mm at maximal diameter;

- At C4-5, there is a 5.5 mm broad-based disc herniation reducing canal eccentric to the right;

- At C5-6, there is a 4.5 mm midline/right paramedian disc herniation; and

- At C6-7, there is a broad disc protrusion and marginal osteophytosis eccentric to the right crowing the right neural foramen.

(Id. at 7-8.)

On May 28, 2019, Mr. Tartikoff visited Dr. Carabelli and told him he still was experiencing cervical, thoracic, and lumbosacral pain radiating to his right upper extremity. (Id. at 8.) On June 3, 2019, an X-ray revealed that Mr. Tartikoff had a comminuted, overriding right clavicle fracture. (Id.) On June 27, 2019, Mr. Tartikoff returned to Dr. Carabelli and told him he still was suffering from cervical, thoracic, and lower back pain and continuing sleep problems. (Id.) During the visit, Dr. Carabelli referred him to a physical therapist, whom Mr. Tartikoff visited through October 2019. (Id.)

On July 23, 2019, Mr. Tartikoff returned to Dr. Carabelli regarding the same back pain he informed him of during his June visit. (Id.) Dr. Carabelli diagnosed Mr. Tartikoff with left C3 to C5 protruding disc. (Id.) Mr. Tartikoff visited Dr. Carabelli another two times: (1) on August 20, 2019 and (2) on October 15, 2019. (Id.) During both visits, Mr. Tartikoff reported continued pain in his cervical, thoracic, and lumbar region. (Id.) During the October 15, 2019 visit, Dr. Carabelli placed Mr. Tartikoff on a home exercise program. (Id.)

In April 2020, Mr. Tartikoff visited Dr. Harvey E. Smith, who is the Chief of Orthopaedic Spine Surgery at the Hospital of the University of Pennsylvania. (Id.) Dr. Smith documented that Mr. Tartikoff's range of motion in his right shoulder was limited and that he experienced numbness in his right hand. (Id.) Dr. Smith also documented that Mr. Tartikoff's cervical and lumber strain from the April 10, 2019 collision exacerbated prior cervical and lumbar degenerative disease. (Id. at 9.) Dr. Smith also noted that his symptoms were concerning for cervical radiculopathy. (Id.)

In July 2020, Mr. Tartikoff visited Dr. Franklin Caldera, a board-certified Physical Medicine and Rehabilitation physician and Pain Management specialist. (Id.) Dr. Caldera documented Mr. Tartikoff's continued pain in his thoracic and lumbar spine as well as in his right clavicle. (Id.) During his visit with Dr. Caldera, Mr. Tartikoff informed him that the "pain interferes with his ability to perform his job, including day to day tasks such as writing, as well as at home with activities of daily living, such as cleaning and doing laundry." (Id.)

At the time of the crash, the Tartikoffs were named insureds on an automobile insurance policy they purchased from USAA (the "USAA Policy"). (Id. at 11.) The USAA Policy provides uninsured and underinsured motorist coverage, both in the amount of $300,000 per named insured and $500,000 per accident. (Id. at 11, 22.) After the April 10, 2019 crash, Mr.

4

Tartikoff filed with USAA a claim for the full policy limits for uninsured motorist benefits. (Id.) USAA denied the claim. (Id.)

As a result of the foregoing, Mr. and Mrs. Tartikoff filed the three-count Complaint in this case. In Count II, the only count Defendant seeks to dismiss in the instant Motion to Dismiss, Mr. Tartikoff alleges that USAA "acted in bad faith by refusing to tender the full UM [("uninsured motorist")] policy limits to its insured." (Id. at 13.) Plaintiff alleges the following demonstrates USAA's bad faith:

- a. Failing to objectively and fairly evaluate Mr. Tartikoff's claim for UM benefits;

- b. Failing to objectively and fairly reevaluate Mr. Tartikoff's claim;

- c. Engaging in dilatory and abusive claims handling;

- d. Failing to adopt or implement reasonable standards in evaluating Mr. Tartikoff's claim;

- e. Acting unreasonably and unfairly in response to Mr. Tartikoff's claim;

- f. Failing to act in good faith to effectuate a fair, prompt, and equitable settlement of Mr. Tartikoff's claim;

- g. In refusing to tender the USAA policy limits;

- h. Subordinating the interests of its insured to its own financial monetary interests;

- i. Failing to promptly offer reasonable payment to Mr. Tartikoff;

- j. Failing to reasonably and adequately evaluate or review the medical documentation in Defendant's possession;

- k. Violating the fiduciary duty owed to Mr. Tartikoff;

- l. Acting unreasonably and unfairly by withholding UM benefits justly due and owed to Mr. Tartikoff;

- m. Failing to make an honest[,] intelligent, and objective settlement offer;

      n.        Compelling its insured to file a lawsuit and engage in litigation when less costly and less time-consuming methods of resolving a dispute between Mr. Tartikoff and USAA exist;

      o.        Compelling Plaintiffs to litigate this claim to recover amounts due under the USAA policy;

      p.        Causing Plaintiffs to expend money in presentation of this claim;

      q.        Causing Plaintiffs to bear stress and anxiety associated with litigation.

(Id. at 13-14.)

On May 3, 2023, USAA filed the instant Motion to Dismiss Count II – Bad Faith. (Doc. No. 4.) USAA argues the Complaint fails to state a claim of bad faith because "the Tartikoffs' allegations are nothing more than a litany of boilerplate, legal conclusions lacking any factual foundation." (Doc. No. 4-1 at 7.) On May 17, 2023, Plaintiffs filed a Response in Opposition, in which they attached as exhibits (1) the report of Dr. Harvey Smith, (2) the report of Dr. Franklin Caldera, and (3) Mr. Tartikoff's demand letter to USAA.[2] (Doc. Nos. 6; 6-1.) On May 24, 2023, USAA filed a Reply. (Doc. No. 7.)

---

[2]  The reports and letter were not attached as exhibits to the Complaint. The two reports by Drs. Smith and Caldera, respectively, detail the medical findings as explained in the Complaint. The demand letter dated November 12, 2019, addressed to a USAA claims adjuster, explains that:

> On June 4, 2019, [the claims adjuster] received 14 photographs in total of Mr. Tartikoff's injuries. The photographs show the severe nature of his injuries. Due to this severe pain from the clavicle, neck, back, and rib injuries, he could not sleep normally or in his own bed. A chaise lounge chair was ordered for him to sleep on.

(Doc. No. 6-1 at 16.) The Complaint does not state whether Plaintiffs sent to USAA any medical records or photographs as described in the November 12, 2019 letter. The letter includes Mr. Tartikoff's records while being treated at Hahnemann Hospital, Dr. Carabelli's reports and physical therapy notes, the MRI scan of his cervical spine, and the reports of his X-rays. (See id. at 14, 20-73.) Also included in the letter is a document from USAA titled "Acknowledgement of Settlement Demand." (Id. at 76-77.) Mr. Tartikoff's settlement demand, however, is not attached as an exhibit, nor is USAA's response to the settlement

### III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323 (3d Cir. 2022), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> The first step in that process requires an articulation of the elements of the claim. . . . The second step involves reviewing the complaint and disregarding any "'formulaic recitation of the elements of a claim' or other legal conclusion," . . . as well as allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual[]" . . . . The third step evaluates the plausibility of the remaining allegations. That involves assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor.

---

demand. However, as discussed below, because the exhibits are not undisputedly authentic, they will not be considered to determine the plausibility of Mr. Tartikoff's bad faith claim.

Id. at 327-28 (citations omitted). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

In Count II of the Complaint, Mr. Tartikoff alleges that USAA's conduct in handling his insurance claim amounts to "bad faith" within the meaning of the Pennsylvania bad faith statute, 42 Pa. C.S. § 8371. (Doc. No. 1-4 at 13.) In turn, USAA argues in its Motion that Count II of the Complaint should be dismissed because his "allegations are nothing more than a litany of boilerplate, legal conclusions lacking any factual foundation" that do not meet the standards to plausibly allege a claim under Iqbal and Twombly. (Doc. No. 4-1 at 4, 7.)

For reasons that follow, the Court agrees with USAA that Mr. Tartikoff has failed to state a plausible claim of bad faith. While the Court will dismiss Mr. Tartikoff's bad faith claim without prejudice, he will be afforded the opportunity to amend the Complaint. But first the

Court will address whether certain documents Plaintiffs attach to their Response in Opposition to the Motion to Dismiss can be considered at this juncture.

### A. The Documents Attached to Plaintiffs' Response in Opposition Are Not Indisputably Authentic Documents That Are Integral to the Complaint

As part of his Response to the Motion to Dismiss, Mr. Tartikoff attaches as Exhibits (1) the report of Dr. Harvey Smith, (2) the report of Dr. Franklin Caldera, and (3) his demand letter to USAA. (Doc. Nos. 6 at 5-6; 6-1.) These documents were not attached as exhibits to the Complaint, although the findings of Dr. Smith and Dr. Caldera were mentioned in it. The only details provided about Mr. Tartikoff's demand to USAA were:

> 46. Following the April 10, 2019 crash, Mr. Tartikoff notified Defendant USAA of the crash and opened an UM claim.
>
> 47. Due to his significant injuries and the likelihood of future costs associated with continuing treatment and management of his injuries, on November 12, 2019, Mr. Tartikoff made a demand for the UM policy limits of $300,000.00 from Defendant USAA.
>
> 48. Subsequently, Defendant USAA denied Mr. Tartikoff's demand for the UM policy limits.

(Doc. No. 1-4 at 11.) USAA contends that "[n]one of the exhibits were attached to the Tartikoffs' Complaint. None were mentioned by name in the Tartikoffs' Complaint. None of the three exhibits are undisputedly authentic." (Doc. No. 7 at 1.)

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). A court faced with a motion to dismiss under Rule 12(b)(6) therefore "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Simko v. U.S. Steel Corp., 992 F.3d 198, 201 n.1 (3d Cir. 2021) (quoting Mayer v.

9

Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  When considering whether a document is integral to a complaint, "[w]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks omitted) (quoting In re Burlington, 114 F.3d at 1426) (citations omitted); see also Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (holding courts may consider "documents that form the basis of a claim").

"However, it is not enough that the complaint rely upon the extrinsic document.  The document must also be 'undisputedly authentic.'" In re Egalet Corp. Secs. Litig., 340 F. Supp. 3d 479, 497 (E.D. Pa. 2018) (quoting In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993)).  Put differently, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002) (internal quotation marks omitted) (quoting 62 Fed. Proc., L. Ed. § 62:508).

Here, the reports of Dr. Smith and Dr. Caldera and Mr. Tartikoff's demand letter to USAA form the basis of the claims alleged in the Complaint.  However, despite the allegations in the Complaint about Mr. Tartikoff's injuries and medical condition, USAA asserts that "[n]one of these documents are undisputedly authentic." (Doc. No. 7 at 1.)  USAA thereby contests the authenticity of the documents.  Because they were not attached as exhibits to the Complaint and are not undisputedly authentic documents, they will not be considered in determining whether the Complaint plausibly alleges that USAA acted in bad faith in violation of 42 Pa. C.S. § 8371.

### B. Mr. Tartikoff's Claim of Bad Faith in Count II Fails to State a Claim Upon Which Relief Can Be Granted

Pennsylvania's bad faith statute provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. The statute does not define "bad faith," but the Pennsylvania Superior Court defines bad faith on the part of an insurer as "any frivolous or unfounded refusal to pay proceeds of a policy." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Bad Faith, Black's Law Dictionary (6th ed. 1990)).

To succeed on a bad faith claim, "a plaintiff must allege that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claims." Yandrisovitz v. Ohio State Life Ins. Co., No. 18-1036, 2018 WL 4203840, at *4 (E.D. Pa. Aug. 31, 2018) (citing W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 312 (3d Cir. 2003)). The insurer's conduct need not be fraudulent, but "mere negligence or bad judgment is not bad faith." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (internal quotation marks omitted) (Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. 2004)). "The insured must ultimately show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will.'" Id.

Because bad faith claims are fact-specific, to survive a motion to dismiss, "a plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements."

11

Toner v. GEICO Ins. Co., 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (citing Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012)).  To that end, "[a] plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair."  Id.

Here, as noted, Mr. Tartikoff's bad faith claim in Count II of the Complaint is premised on the following allegations regarding USAA's conduct in handling their insurance claim:

a. Failing to objectively and fairly evaluate Mr. Tartikoff's claim for UM benefits;

b. Failing to objectively and fairly reevaluate Mr. Tartikoff's claim;

c. Engaging in dilatory and abusive claims handling;

d. Failing to adopt or implement reasonable standards in evaluating Mr. Tartikoff's claim;

e. Acting unreasonably and unfairly in response to Mr. Tartikoff's claim;

f. Failing to act in good faith to effectuate a fair, prompt, and equitable settlement of Mr. Tartikoff's claim;

g. In refusing to tender the USAA policy limits;

h. Subordinating the interests of its insured to its own financial monetary interests;

i. Failing to promptly offer reasonable payment to Mr. Tartikoff;

j. Failing to reasonably and adequately evaluate or review the medical documentation in Defendant's possession;

k. Violating the fiduciary duty owed to Mr. Tartikoff;

l. Acting unreasonably and unfairly by withholding UM benefits justly due and owed to Mr. Tartikoff;

m. Failing to make an honest[,] intelligent, and objective settlement offer;

  n.  Compelling its insured to file a lawsuit and engage in litigation when less costly and less time-consuming methods of resolving a dispute between Mr. Tartikoff and USAA exist;

  o.  Compelling Plaintiffs to litigate this claim to recover amounts due under the USAA policy;

  p.  Causing Plaintiffs to expend money in presentation of this claim;

  q.  Causing Plaintiffs to bear stress and anxiety associated with litigation.

(Doc. No. 1-4 at 13-14.)  Based on these allegations, Mr. Tartikoff argues the Complaint "alleged sufficient facts to state a claim for insurance bad faith that is plausible on its face." (Doc. No. 6 at 17.)  The Court disagrees.

  Several decisions from this Court have held that allegations like the ones asserted by Mr. Tartikoff are insufficient to state a plausible bad faith claim.  For example, in <u>MBMJ Props., LLC v. Millville Mut. Ins. Co.</u>, this Court held that the plaintiff's nearly identical allegations of bad faith were insufficient to state a claim under Rule 12(b)(6).  No. 18-5071, 2019 WL 1651667, at *6 (E.D. Pa. Apr. 16, 2019).  In <u>MBMJ</u>, the plaintiff sued the defendant under its renters' insurance policy, alleging claims of breach of contract and bad faith stemming from the defendant's refusal to pay plaintiff for losses incurred at its rental property.  <u>Id.</u>  With respect to the plaintiff's bad faith claim, it alleged that the defendant had acted in bad faith under § 8371:

  a.  by sending correspondence falsely representing that Plaintiff's loss caused by a peril insured against under the Policy was not entitled to benefits due and owing under the Policy;

  b.  in failing to complete a prompt and thorough investigation of Plaintiff's claim before representing that such claim is not covered under the Policy;

  c.  in failing to pay Plaintiff's covered loss in a prompt and timely manner;

  d.  in failing to objectively and fairly evaluate Plaintiff's claim;

  e.  in conducting an unfair and unreasonable investigation of Plaintiff's claim;

      f.      in asserting Policy defenses without a reasonable basis in fact;

      g.      in flatly misrepresenting pertinent facts or policy provisions relating to coverages at issue and placing unduly restrictive interpretations on the Policy and/or claim forms;

      h.      in failing to keep Plaintiff or its representative fairly and adequately advised as to the status of the claim;

      i.      in unreasonably valuing the loss and failing to fairly negotiate the amount of the loss with Plaintiff or their representatives;

      j.      in failing to promptly provide a reasonable factual explanation of the basis for the denial of Plaintiff's claim;

      k.      in unreasonably withholding policy benefits;

      l.      in acting unreasonably and unfairly in response to Plaintiff's claim;

      m.      in unnecessarily and unreasonably compelling Plaintiff to institute this lawsuit to obtain policy benefits for a covered loss, that Defendant should have paid promptly and without the necessity of litigation.

Id. at **1-2. The Court in MBMJ stated that "the Complaint is devoid of allegations as to (1) the timing of the alleged investigation in relation to when Plaintiffs submitted their claim, (2) the methods and procedures by which the investigation was conducted, and (3) the length of the investigation from start to finish." Id. at *6. As a result, the Court concluded that the plaintiff's claims "lack[ed] the requisite factual support to state a plausible claim of bad faith under § 8371." Id.

Similarly, in Soldrich v. State Farm Fire and Casualty Co., the court dismissed the plaintiff's § 8371 bad faith claim upon finding that the allegations in the complaint failed to state a plausible claim under Rule 12(b)(6). No. 15-1438, 2015 WL 7568442 (E.D. Pa. Nov. 25, 2015). The plaintiff in Soldrich sued his insurance company for breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith under § 8371, after the insurance

14

company denied the plaintiff coverage for damage incurred at his property. Id. at *1. Similar to the allegations in this case, the plaintiff premised his bad faith claim on the following:

> In his Complaint, Plaintiff alleges that Defendant has failed to properly adjust Plaintiff's claim and has acted in bad faith by (a) failing to pay the full amount owed to him under the policies; (b) failing to timely pay the amounts owed; (c) scheming to defraud him; (d) recklessly disregarding its obligations under the policy; (e) accepting the premiums from him without intending to pay monies owed for covered losses; (f) fraudulently telling him that the losses were not covered despite having no evidence to support that contention; (h) claiming that losses were due to uncovered causes despite evidence to support a covered loss; (i) unilaterally denying covered losses without proper investigation; and (j) falsely misrepresenting its responsibilities under the policy. Furthermore, Plaintiff alleges that Defendant unreasonably and unjustifiably delayed the handling of Plaintiff's insurance claim and knew or disregarded the fact that it was doing so.

Id. at *4. The court found that these allegations lacked the requisite factual support to state a plausible claim under Rule 12(b)(6). The court also found that the allegations were impermissibly conclusory, noting as an example that:

> . . . Plaintiff alleges that Defendant "unreasonably delayed the handling of the Plaintiff's insurance claims" but there are no facts alleged in the Complaint that relate to the alleged delay, such as the length of time that passed between the date when Plaintiff notified Defendant of his claims and the date that Defendant responded to them.

Id. Consequently, the court dismissed the plaintiff's bad faith claim, holding that these "cursory allegations assert that Defendant lacked a reasonable basis for denying Plaintiff's claim for benefits, but do not provide any factual allegations from which the Court could make a plausible inference that Defendant knew or recklessly disregarded its lack of a reasonable basis for denying benefits." Id. (internal quotation marks omitted) (Pasqualino v. State Farm Mut. Auto. Ins. Co., No. 15-77, 2015 WL 3444288, at *5 (E.D. Pa. May 28, 2015)).

Like the plaintiffs in MBMJ and Soldrich, Mr. Tartikoff in this case has based his bad faith claim solely on conclusory allegations that are insufficient to withstand USAA's Motion to Dismiss. For example, Mr. Tartikoff alleges that USAA failed to (1) objectively and fairly

15

evaluate his claim, (2) adopt or implement reasonable standards in evaluating his claim, and (3) reasonably and adequately evaluate his medical documents. (Doc. No. 1-4 at 13-14.) But the Complaint is devoid of allegations as to the timing, methods, procedures, or length of the investigation by which the evaluation was conducted. As such, Mr. Tartikoff's claim that USAA's evaluation of his uninsured motorist claim was not objective, fair, or reasonable lacks plausibility. The same can be said with respect to each of Plaintiff's other allegations of USAA's bad faith.

### C. Plaintiff Will Be Granted Leave to Amend the Complaint

Federal Rule of Civil Procedure 15(a)(2) instructs that "[t]he court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004). To that end, the Third Circuit Court of Appeals has held that "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" Lundy v. Adamar of N.J., Inc., 34 F.3d 1173, 1196-97 (3d Cir. 1994) (quoting Bechtel v. Robinson, 886 F.2d 644, 652-53 (3d Cir. 1989)).

Here, the Court is satisfied that affording Plaintiffs the opportunity to file an Amended Complaint would not cause undue or substantial prejudice to USAA. This case is still in its early stages and allowing Plaintiffs a chance to amend the Complaint would not significantly delay the progress of the litigation. Accordingly, the Court will grant Plaintiffs leave to amend the Complaint. If Plaintiffs are unable to allege plausible facts underlying their claim of bad faith, then the Complaint should not be amended.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Count II – Bad Faith (Doc. No. 4) will be granted.  The Court will dismiss Count II of the Complaint without prejudice and grant Plaintiffs leave to file an Amended Complaint.  An appropriate Order follows.