IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN AND ANNE TARTIKOFF,

Plaintiffs,

v.

USAA CASUALTY INSURANCE
COMPANY,

Defendant.

CIVIL ACTION
NO. 23-1590

**OPINION**

**Slomsky, J.**                                                                                 **June 7, 2024**

## I.      INTRODUCTION

On April 10, 2019, Plaintiff John Tartikoff was riding his bicycle when an uninsured motorist ran through a red light and struck him.  Plaintiff was knocked from his bike and sustained serious injuries, including multiple fractures, displaced ribs, and abrasions.  He was treated by several specialists.  Plaintiff had $300,000 per person uninsured motorist coverage with Defendant USAA Casualty Insurance Company ("Defendant" or "USAA").  He requested payment of the full policy limits to compensate him for his injuries.  Defendant denied his request.

On March 23, 2023, Plaintiff and his wife Anne Tartikoff ("Plaintiffs") filed a three-count Complaint against Defendant in the Court of Common Pleas of Philadelphia County, alleging that USAA breached its insurance contract with Plaintiff when it denied his claim.  He contends that the denial was done in bad faith.  Mrs. Tartikoff alleges that she is entitled to uninsured motorist benefits based on loss of consortium.  On April 26, 2023, Defendant removed this case to federal court.

1

On May 5, 2023, Defendant filed a Motion to Dismiss Plaintiffs' Bad Faith Claim alleged in Count II. (Doc. No. 4.) On August 30, 2023, the Court granted Defendant's Motion to Dismiss Plaintiffs' Bad Faith Claim without prejudice and granted Plaintiffs leave to file an Amended Complaint. (Doc. No. 11.)

On September 27, 2023, Plaintiffs filed an Amended Complaint. (Doc. No. 14.) In this Complaint, they reallege the same three claims asserted in the original Complaint: Defendant breached its contractual duties to Mr. Tartikoff (Count I), denied his uninsured motorist claim in bad faith (Count II), and the loss of consortium (Count III). On October 11, 2023, Defendant filed a Motion to Dismiss Count II of the Amended Complaint. (Doc. No. 15.) On November 30, 2023, Plaintiffs filed a Response (Doc. No. 16) and on December 7, 2023, Defendant filed a Reply (Doc. No. 17). For reasons that follow, the Court will grant Defendant's Motion to Dismiss Count II of the Amended Complaint (Doc. No. 15).

II.      BACKGROUND[1]

On the morning of April 10, 2019, Plaintiff was riding his bicycle westbound on Arch Street in Philadelphia, Pennsylvania. (Doc. No. 14 at 4.) As he approached the intersection of Arch and Broad Streets, he proceeded through the intersection in the crosswalk. (Id.) While Plaintiff was proceeding through the intersection, James Rodgers, who was driving his Nissan Altima, ran a red light at the intersection and struck Plaintiff. (Id.) Rodgers's vehicle was not insured at the time, and he did not have any insurance that would cover the collision. (Id. at 8.) After the collision, Plaintiff was admitted as a trauma patient at Hahnemann Hospital and reported neck pain that radiated down the right side of his body, right shoulder pain, and upper and lower

---

[1]    The following facts are taken from Plaintiffs' Amended Complaint and are accepted as true at the motion to dismiss stage.

back pain.  (Id. at 4.)  He was diagnosed with a right clavicle fracture, multiple displaced ribs and comminuted rib fractures,[2] a lacerated left forearm, and multiple abrasions.  (Id. at 4-5.)  He was prescribed pain medications and was discharged with instructions to follow up with an orthopedist.  (Id. at 5.)  During the months that followed, Plaintiff experienced continuing pain and consulted with specialists.

At the time of the April 10, 2019 collision, Plaintiffs were named insureds on an automobile insurance policy they purchased from USAA (the "USAA Policy").  (Id. at 9.)  The USAA Policy provides uninsured and underinsured motorist coverage, both in the amount of $300,000 per named insured and $500,000 per accident.  (Id.)  After the April 10, 2019 crash, Plaintiff filed with USAA a claim for the full policy limits for uninsured motorist benefits.  (Id.)  USAA denied the full claim, but offered two counter-settlement offers.  (Doc. No. 16 at 4, 6; Doc. No. 17 at 3.)  USAA first offered Plaintiff $70,000 to resolve the claim, which he declined. (Doc. No. 16 at 4.)  USAA then offered Mr. Tartikoff $100,000, which he also declined.  (Id. at 6.)

As a result, Plaintiffs filed the original Complaint in this case alleging that Defendant breached its contractual duties (Count I), Defendant acted in bad faith when it denied Plaintiff's uninsured motorist claim (Count II), and Ms. Tartikoff was entitled to uninsured motorist benefits based on loss of consortium (Count III).  (Doc. No. 1-4.)  In response, Defendant filed a Motion to Dismiss Count II of the Complaint, in which Plaintiff alleges that USAA "acted[ed] in bad faith by refusing to tender the full UM [("uninsured motorist")] policy limits to its insured."  (Id. at 13.)

In the original Complaint, Plaintiff's bad faith claim as averred in Count II of the Complaint is premised on the following allegations regarding USAA's conduct in handling his insurance claim:

---

[2]   A comminuted fracture occurs when a bone breaks into multiple pieces.

a. Failing to objectively and fairly evaluate Mr. Tartikoff's claim for [Uninsured Motorist] benefits;

b. Failing to objectively and fairly reevaluate Mr. Tartikoff's claim;

c. Engaging in dilatory and abusive claims handling;

d. Failing to adopt or implement reasonable standards in evaluating Mr. Tartikoff's claim;

e. Acting unreasonably and unfairly in response to Mr. Tartikoff's claim;

f. Failing to act in good faith to effectuate a fair, prompt, and equitable settlement of Mr. Tartikoff's claim;

g. In refusing to tender the USAA policy limits;

h. Subordinating the interests of its insured to its own financial monetary interests;

i. Failing to promptly offer reasonable payment to Mr. Tartikoff;

j. Failing to reasonably and adequately evaluate or review the medical documentation in Defendant's possession;

k. Violating the fiduciary duty owed to Mr. Tartikoff;

l. Acting unreasonably and unfairly by withholding UM benefits justly due and owed to Mr. Tartikoff;

m. Failing to make an honest[,] intelligent, and objective settlement offer;

n. Compelling its insured to file a lawsuit and engage in litigation when less costly and less time-consuming methods of resolving a dispute between Mr. Tartikoff and USAA exist;

o. Compelling Plaintiffs to litigate this claim to recover amounts due under the USAA policy;

p. Causing Plaintiffs to expend money in presentation of this claim;

q. Causing Plaintiffs to bear stress and anxiety associated with litigation.

(Id. at 13-14.)

4

On August 30, 2023, the Court issued an Order granting Defendant's Motion to Dismiss Count II and dismissed it without prejudice.  (Doc. No. 9.)  The Motion was granted because Plaintiff based his bad faith claim solely on conclusory allegations that were insufficient to withstand a motion to dismiss.  As the Court wrote:

> [Plaintiff] alleges that USAA failed to (1) objectively and fairly evaluate his claim, (2) adopt or implement reasonable standards in evaluating his claim, and (3) reasonably and adequately evaluate his medical documents. (Doc. No. 1-4 at 13-14.) But the Complaint is devoid of allegations as to the timing, methods, procedures, or length of the investigation by which the evaluation was conducted. As such, Mr. Tartikoff's claim that USAA's evaluation of his uninsured motorist claim was not objective, fair, or reasonable lacks plausibility. The same can be said with respect to each of Plaintiff's other allegations of USAA's bad faith.

(Doc. No. 8 at 15-16.)  In the same Order that dismissed Count II, Plaintiffs were granted leave to file an Amended Complaint.  (Doc. No. 9.)

On September 27, 2023 Plaintiffs filed the Amended Complaint asserting the same three claims against Defendant.  (Doc. No. 14.)  In Count II, Plaintiffs now allege as Defendant's bad faith the following:

a.    Failing to objectively and fairly evaluate Mr. Tartikoff's claim for UM benefits;

b.    Failing to objectively and fairly reevaluate Mr. Tartikoff's claim;

c.    Engaging in dilatory and abusive claims handling;

d.    Failing to adopt or implement reasonable standards in evaluating Mr. Tartikoff's claim;

e.    Acting unreasonably and unfairly in response to Mr. Tartikoff's claim;

f.    Failing to act in good faith to effectuate a fair, prompt, and equitable settlement of Mr. Tartikoff's claim;

g.    In refusing to tender the USAA policy limits;

h.    Subordinating the interests of its insured to its own financial monetary interests;

i.      Failing to promptly offer reasonable payment to Mr. Tartikoff;

j.      Failing to reasonably and adequately evaluate or review the medical documentation in Defendant's possession;

k.      Violating the fiduciary duty owed to Mr. Tartikoff;

l.      Acting unreasonably and unfairly by withholding UM benefits justly due and owed to Mr. Tartikoff;

m.      Failing to make an honest, intelligent, and objective settlement offer;

n.      Compelling its insured to file a lawsuit and engage in litigation when less costly and less time-consuming methods of resolving a dispute between Mr. Tartikoff and USAA exist;

o.      Compelling Plaintiffs to litigate this claim to recover amounts due under the USAA policy;

p.      Causing Plaintiffs to expend money in presentation of this claim;

q.      Causing Plaintiffs to bear stress and anxiety associated with litigation.

(Id. at 11-12.)  These allegations are identical to those raised in the original Complaint.  Newly asserted allegations in Count II of the Amended Complaint are the following:

7.      Plaintiff John Tartikoff dutifully paid his automobile insurance premiums to Defendant USAA Casualty Insurance Company ("USAA CIC") for, inter alia, the unlikely event that he would be injured by an uninsured motorist.

8.      Plaintiff John Tartikoff relied on his insurance carrier to honor its commitments for the awful events which happened here.

9.      Plaintiffs made reasonable demands within the limits of the available coverage.

10.      In support of those demands, Plaintiffs provided hospital reports, physical therapy notes and records, a report of an MRI scan of the cervical spine report and x-ray reports depicting the severity of Mr. Tartikoff's injuries and necessity for ongoing treatment.

11.      By any objective measure, the value of Plaintiff's injuries far exceeds the uninsured motorist ("UM") benefits for which he paid Defendant USAA CIC.

6

12.   Considering John Tartikoff's considerable pain and suffering, the permanency of his injuries, and his economic damages, this is a policy limits case in any state or federal courthouse in the United States.

13.   A reasonable insurance company would have adjusted this case properly and resolved this claim.

14.   USAA CIC[3] is not that company.

15.   USAA CIC has all the necessary documentation to fairly and fully adjust this claim for its insureds.

16.   USAA CIC denied, and continues to deny, Plaintiffs' reasonable demands and made a de minimis offers in response.

17.   USAA CIC's failure to reasonably adjust this claim constitutes a breach of contract and bad faith under Pennsylvania law.

18.   As a result, Plaintiffs initiated this action for breach of contract, bad faith and loss of consortium against USAA CIC.

(Id. at 2-3) (internal citations omitted).

On October 11, 2023, Defendant filed another Motion to Dismiss Count II of Plaintiffs' Amended Complaint.  (Doc. No. 15.)  In the Motion, USAA once again argues that the Amended Complaint fails to state a claim of bad faith because "[Plaintiff] only sets forth boilerplate, conclusory allegations that are insufficient to state a viable claim for insurance bad faith upon which relief can be granted." (Id. at 3.)  USAA further argues that, "[t]he new allegations asserted in [Plaintiffs'] Amended Complaint only serve to underline that the parties disagree as to the value of the Tartikoff's claims; a situation that does not give rise to bad faith."  (Id.)  On November 30, 2023, Plaintiffs' filed a Brief in Opposition to Defendant's Motion. [4]  (Doc. No. 16.)

---

[3]   "CIC" stands for Casualty Insurance Company.  (Doc. No. 14 at 2.)

[4]   USAA also argues that Plaintiffs' failure to file a timely response within fourteen (14) days of service of the Motion to Dismiss Count II should result in denial of the Motion pursuant to the Eastern District of Pennsylvania Local Rule 7.1(c).  (See Doc. No. 17 at 1); see also e.g., Loc. R. Civ. P. 7.1(c) ("any party opposing [a] motion shall serve a brief in opposition together with

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).   After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.   Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).   "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"   Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).   Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."   Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323 (3d Cir. 2022), set forth a three-part analysis

---

such answer or other response that may be appropriate, within fourteen (14) days after service of the motion" unless the Court directs otherwise and "[i]n the absence of timely response, the motion may be granted as uncontested."); Celestial Cty. Dev. Corp. v. City of Phila., 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012) ("Plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested." (internal citations omitted)); Nelson v. DeVry, Inc., Civ. A. No. 07–4436, 2009 WL 1213640, *10 (E.D. Pa. 2009) ("Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed." (internal citations omitted)); Smith v. Nat'l Flood Ins. Program of the Fed. Emergency Mgmt. Agency, 156 F. Supp. 2d. 520, 525 (E.D. Pa. 2001) (granting motion to dismiss as unopposed with respect to claim plaintiff failed to address).   Nevertheless, because there is an alternative basis for dismissal of Count II, the Court need not address the timeliness issue.

that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> The first step in that process requires an articulation of the elements of the claim. . . . The second step involves reviewing the complaint and disregarding any "'formulaic recitation of the elements of a claim' or other legal conclusion," . . . as well as allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual[]" . . . . The third step evaluates the plausibility of the remaining allegations. That involves assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor.

Id. at 327-28 (citations omitted). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV.   ANALYSIS

In Count II of the Amended Complaint, Plaintiffs reallege that Defendant's conduct in handling his insurance claim amounts to "bad faith" within the meaning of the Pennsylvania bad faith statute, 42 Pa. C.S. § 8371. (Doc. No. 14 at 13.) In turn, Defendant argues that Count II of

the Amended Complaint, like Count II in the original Complaint, should be dismissed because Plaintiffs "set[] forth boilerplate, conclusory allegations that are insufficient to state a viable claim for insurance bad faith upon which relief can be granted." (Doc. No. 15 at 3.) For reasons that follow, the Court agrees with Defendant that Plaintiffs again have failed to state a plausible claim of bad faith and Count II of the Amended Complaint will therefore be dismissed.

Pennsylvania's bad faith statute provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

> (2) Award punitive damages against the insurer.

> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. The statute does not define "bad faith," but the Pennsylvania Superior Court has defined bad faith on the part of an insurer as "any frivolous or unfounded refusal to pay proceeds of a policy." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Bad Faith, Black's Law Dictionary (6th ed. 1990)).

Thus, to succeed on a bad faith claim, "a plaintiff must allege that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claims." Yandrisovitz v. Ohio State Life Ins. Co., No. 18-1036, 2018 WL 4203840, at *4 (E.D. Pa. Aug. 31, 2018) (citing W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 312 (3d Cir. 2003)). The insurer's conduct need not be fraudulent, but "mere negligence or bad judgment is not bad faith." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (internal quotation marks omitted) (Brown v.

Progressive Ins. Co., 860 A.2d 493, 501 (Pa. 2004)). "The insured must ultimately show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will.'" Id.

Because bad faith claims are fact-specific, to survive a motion to dismiss, "a plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements." Toner v. GEICO Ins. Co., 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (citing Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012)). To that end, "[a] plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." Id.

As stated earlier, certain allegations asserted for Count II in the Amended Complaint are identical to those raised in the original Complaint. They are as follows:

a.  Failing to objectively and fairly evaluate Mr. Tartikoff's claim for UM benefits;

b.  Failing to objectively and fairly reevaluate Mr. Tartikoff's claim;

c.  Engaging in dilatory and abusive claims handling;

d.  Failing to adopt or implement reasonable standards in evaluating Mr. Tartikoff's claim;

e.  Acting unreasonably and unfairly in response to Mr. Tartikoff's claim;

f.  Failing to act in good faith to effectuate a fair, prompt, and equitable settlement of Mr. Tartikoff's claim;

g.  In refusing to tender the USAA policy limits;

h.  Subordinating the interests of its insured to its own financial monetary interests;

i.  Failing to promptly offer reasonable payment to Mr. Tartikoff;

j.  Failing to reasonably and adequately evaluate or review the medical documentation in Defendant's possession;

k.  Violating the fiduciary duty owed to Mr. Tartikoff;

11

l.      Acting unreasonably and unfairly by withholding UM benefits justly due and owed to Mr. Tartikoff;

m.      Failing to make an honest, intelligent, and objective settlement offer;

n.      Compelling its insured to file a lawsuit and engage in litigation when less costly and less time-consuming methods of resolving a dispute between Mr. Tartikoff and USAA exist;

o.      Compelling Plaintiffs to litigate this claim to recover amounts due under the USAA policy;

p.      Causing Plaintiffs to expend money in presentation of this claim;

q.      Causing Plaintiffs to bear stress and anxiety associated with litigation.

(Doc. No. 14 at 11-12.)

Courts have held that allegations like these are insufficient to state a plausible bad faith claim.  For example, in MBMJ Props., LLC v. Millville Mut. Ins. Co., this Court held that the plaintiff's nearly identical allegations of bad faith were insufficient to state a claim under Federal Rule of Civil Procedure 12(b)(6).  No. 18-5071, 2019 WL 1651667, at *6 (E.D. Pa. Apr. 16, 2019). In MBMJ, the plaintiff sued the defendant under its renters' insurance policy, alleging claims of breach of contract and bad faith stemming from the defendant's refusal to pay plaintiff for losses incurred at its rental property.  Id.  Regarding plaintiff's bad faith claim, it alleged that the defendant had acted in bad faith under § 8371 by engaging in the following conduct:

a.      by sending correspondence falsely representing that Plaintiff's loss caused by a peril insured against under the Policy was not entitled to benefits due and owing under the Policy;

b.      in failing to complete a prompt and thorough investigation of Plaintiff's claim before representing that such claim is not covered under the Policy;

c.      in failing to pay Plaintiff's covered loss in a prompt and timely manner;

d.      in failing to objectively and fairly evaluate Plaintiff's claim;

e.      in conducting an unfair and unreasonable investigation of Plaintiff's claim;

12

f.      in asserting Policy defenses without a reasonable basis in fact;

g.      in flatly misrepresenting pertinent facts or policy provisions relating to coverages at issue and placing unduly restrictive interpretations on the Policy and/or claim forms;

h.      in failing to keep Plaintiff or its representative fairly and adequately advised as to the status of the claim;

i.      in unreasonably valuing the loss and failing to fairly negotiate the amount of the loss with Plaintiff or their representatives;

j.      in failing to promptly provide a reasonable factual explanation of the basis for the denial of Plaintiff's claim;

k.      in unreasonably withholding policy benefits;

l.      in acting unreasonably and unfairly in response to Plaintiff's claim;

m.      in unnecessarily and unreasonably compelling Plaintiff to institute this lawsuit to obtain policy benefits for a covered loss, that Defendant should have paid promptly and without the necessity of litigation.

Id. at **1-2.  In MBMJ, this Court stated that "the Complaint is devoid of allegations as to (1) the timing of the alleged investigation in relation to when Plaintiffs submitted their claim, (2) the methods and procedures by which the investigation was conducted, and (3) the length of the investigation from start to finish."  Id. at *6.  As a result, the Court concluded that the plaintiff's claims "lack[ed] the requisite factual support to state a plausible claim of bad faith under § 8371."  Id.

To overcome these limitations, Plaintiffs have included in Count II additional allegations to support their claim of bad faith in Count II.  They are as follows:

7.      Plaintiff John Tartikoff dutifully paid his automobile insurance premiums to Defendant USAA Casualty Insurance Company ("USAA CIC") for, inter alia, the unlikely event that he would be injured by an uninsured motorist.

8.      Plaintiff John Tartikoff relied on his insurance carrier to honor its commitments for the awful events which happened here.

13

9.      Plaintiffs made reasonable demands within the limits of the available coverage.

10.     In support of those demands, Plaintiffs provided hospital reports, physical therapy notes and records, a report of an MRI scan of the cervical spine report and x-ray reports depicting the severity of Mr. Tartikoff's injuries and necessity for ongoing treatment.

11.     By any objective measure, the value of Plaintiff's injuries far exceeds the uninsured motorist ("UM") benefits for which he paid Defendant USAA CIC.

12.     Considering John Tartikoff's considerable pain and suffering, the permanency of his injuries, and his economic damages, this is a policy limits case in any state or federal courthouse in the United States.

13.     A reasonable insurance company would have adjusted this case properly and resolved this claim.

14.     USAA CIC is not that company.

15.     USAA CIC has all the necessary documentation to fairly and fully adjust this claim for its insureds.

16.     USAA CIC denied, and continues to deny, Plaintiffs' reasonable demands and made a de minimis offers in response.

17.     USAA CIC's failure to reasonably adjust this claim constitutes a breach of contract and bad faith under Pennsylvania law.

18.     As a result, Plaintiffs initiated this action for breach of contract, bad faith and loss of consortium against USAA CIC.

(Id. at 2-3) (internal citations omitted).  But these additional allegations have the same insufficiencies as the allegations above.

In the new allegations, Plaintiffs are merely alleging in the pertinent paragraphs that Defendant failed to (1) objectively and fairly evaluate Mr. Tartikoff's claim, (2) adopt or implement reasonable standards in evaluating his claim submission, and (3) reasonably and adequately evaluate Mr. Tartikoff's medical documents. (Doc. No. 14 at 11-12.) But the Amended Complaint is again devoid of sufficient allegations as to the timing, methods, procedures, or length

14

of the investigation by which the evaluation was conducted.  As such, Mr. Tartikoff's claim that Defendant's evaluation of his uninsured motorist claim was not objective, fair, or reasonable lacks plausibility.  In essence, Plaintiff is alleging that Defendant denied the claim because there is a dispute over the amount to be paid under the policy coverage.

Plaintiffs offer no factual support to their conclusions that "[b]y any objective measure, the value of Plaintiff's injuries far exceeds the uninsured motorist ("UM") benefits for which he paid Defendant" and considering Plaintiff's injuries that "this is a policy limits case in any state or federal courthouse in the United States."  (Doc. No. 14 at 2.)  Plaintiffs attached as Exhibits (1) the report of Dr. Harvey Smith and (2) the report of Dr. Franklin Caldera as support for their assertion that "[b]y any objective measure, the value of Plaintiff's injuries far exceeds the uninsured motorist ("UM") benefits."  (Doc. No. 14 at 1-2.)  However, these documents only serve to establish that Plaintiff suffered injuries that entitle him to the benefits under his UM policy with USAA.  The medical reports themselves do not establish the value of the claim and USAA did not deny outright Plaintiff claims for benefits under the UM policy.  (See Doc. No. 16 at 4, 6.)  Defendant's two counter settlement offers and Plaintiffs' subsequent rejections of the offers indicate that the dispute here is over the value of the claim.  However, a disagreement over settlement amount cannot, without more, amount to bad faith.  See McDonough v. State Farm Fire & Cas. Co., 365 F. Supp. 3d 552, 558 (E.D. Pa. 2019).

In sum, Mr. Tartikoff's claim that Defendant's evaluation of his uninsured motorist claim was not objective, fair, or reasonable lacks plausibility.  The same can be said with respect to each of Plaintiff's other allegations of Defendant's bad faith.

**V.    CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Count II of Plaintiffs' Amended Complaint (Doc. No. 15) will be granted.  An appropriate Order follows.